IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02914-JLK-MEH

TRACY HOUSTON,

    Plaintiff,

vs.

THE UNITED STATES OF AMERICA,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
FINAL TRIAL PREPARATION CONFERENCE
_____

    Proceedings before the HONORABLE JOHN L. KANE, JR., Senior Judge, United States District Court for the District of Colorado, continuing at 10:47 a.m., on the 15th day of September, 2020, via Video Teleconference.

**A P P E A R A N C E S**

    STEVEN A. SHAPIRO, MICHAEL JON OGBORN, Attorneys at Law, Ogborn Mihm, LLP, 1700 Lincoln Street, Suite 2700, Denver, Colorado, 80203, appearing for the Plaintiff.

    JANE ELIZABETH BOBET and VICTOR WILLIAM SCARPATO, III, Attorneys at Law, 1801 California Street, Suite 1600, Denver, Colorado, 80202, appearing for the Defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

```
 1                    P R O C E E D I N G S
 2           (In open court at 10:47 a.m.)
 3           THE COURT:  This is an unusual experience for all of
 4  us; and I want to, first of all, thank counsel for being as
 5  intrepid and courageous as you are in going through this.
 6           I want to explain before we begin something about how
 7  we came to this state of affairs.  And for the record, it is
 8  obvious that we're in the midst of a -- although there is some
 9  politicians that might disagree with that statement -- we're in
10  the midst of coronavirus pandemic; and there have been numerous
11  rules and regulations that have been established in the courts
12  in order to deal with this.  One of them is to have suspended
13  all trials except for trials in the pilot program.  And the
14  cases that are selected for the pilot program are those
15  selected by the chief judge; and he has used, as one would
16  expect, a rational process for deciding how to do this.  And
17  there are both jury and bench trials that are involved.
18           The jury trials, of course, require considerably more
19  planning, two courtrooms -- actually, three, when you count the
20  jury assembly room -- are needed, and the various jurors are
21  separated.  But this is a bench trial.  And what has happened
22  here is that the chief judge has asked all of our Bench to
23  advise him of cases that are bench trials that are ready for
24  trial.  All of us did that; and there have been, to my
25  reckoning, two previous bench trials in August and I believe
```

1    one in July.  He then had to decide in terms of the days taken
2    for trial, the age of the case, and whether there had been any
3    continuances of trial dates as a result of the pandemic; he
4    then decided which cases and the priority those cases should go
5    to trial.  And this was the third one.
6             And we have taken some steps here that are somewhat
7    special, in that a number of the witnesses are from the Grand
8    Junction area of Colorado, which is on the Western Slope in the
9    northern part of the state and accessible primarily by
10   Interstate 70.  And that -- there have been forest fires, and
11   that freeway -- interstate highway was closed at times and is
12   still one which I'm advised has occasional landslides because
13   of the mud.  And the weather being unpredictable, it might be
14   closed again.
15            But glad to that, because it is a personal injury
16   case, and I noted that the attending physicians were for the
17   most part located in Grand Junction, Colorado, that it would be
18   sensible to have them remain there, especially because these
19   are people that handle emergency medical situations and are
20   needed there for the pursuit of their own profession.  And then
21   the lawyers are from here in Denver; so is the Court.
22            So I had fluctuated from time to time trying to
23   balance all of these conditions as to how to try this case and
24   had originally wanted to try it entirely in Grand Junction.
25   But our court facilities there are not sufficient to handle

1  quite a bit of this technological -- (unintelligible) -- not
2  totally adequate.  But we will try the case here in Denver,
3  Colorado, the testimony of witnesses in the Grand Junction or
4  Mesa County area by videoconference.  And likewise because of
5  the quarantine people out of court -- (unintelligible).
6          Well, this is one of the difficulties presented by
7  trying this matter the way we are.
8          I regret that kind of difficulty that we've had, and
9  we'll probably have that again throughout this proceeding.
10 Nevertheless, you can understand why we're proceeding the way
11 that we are.
12         And the next thing I wanted to tell you:  This is a
13 bench trial; as a consequence, I am denying the motion
14 *in limine*, Document 59, without prejudice to make objections
15 during trial.  Because this is a bench trial, and I have to
16 decide what is admissible and what isn't and look at both of
17 these matters under any circumstance.  So a motion *in limine*,
18 in my view, doesn't make any -- it has no practical use in this
19 case.  So what we will do is we'll go through and try to keep
20 the technical requirements of foundation at a minimum.  You've
21 already done a very good job of going through the exhibit lists
22 and stipulating to a number of things.
23         Now, I will in some instances accept some documentary
24 evidence without considering all of it, but that will
25 ultimately show on my findings of fact and conclusions of law.

1            What I want to do with regard to the witness list is
2   to have -- try and keep this at a minimum of having people
3   testify.  Therefore, if a witness is called, I want to do it in
4   this manner:  That we'll start with the plaintiff's amended
5   witness list -- which is Document 57-1.  And the first witness
6   listed is Officer Myles Shiflet of the Grand Junction Police
7   Department.  That makes sense for him to be called first; and
8   then Mr. Hendricks, the EMT from the Grand Junction Fire
9   Department, is listed next.
10           I want to have these witnesses who are going to be
11  called by both parties conducted in this way:  The plaintiff
12  calls a witness first; the defendant cross-examines; and then
13  where defendant has listed, as defendant has with
14  Mr. Hendricks, for example, to call his own -- so what we'll do
15  is this:  The plaintiff will call and conduct a direct
16  examination without leading the witness; then defense counsel
17  may cross-examine and lead; but when going into new matters,
18  the matters that the defendant's counsel intended to elicit
19  from the witness, you'll just advise me and go into direct
20  examination; after which and limited to those new matters on
21  direct examination by the defendant, the plaintiff can
22  cross-examine; and then if there is any additional redirect by
23  the defendant on the new matters, the defendant can do that.
24           That would apply, it looks to me from my initial
25  check, to Mr. Hendricks, Dr. Cota, Dr. Lynn Price, and the

1  plaintiff, Tracy Houston.  We can take all of that testimony

2  first, and then go into the other witnesses according to

3  plaintiff's list and then to defendant's.

4            Now, if there is any question at all about scheduling

5  any of these witnesses or having them testify as so-called

6  out-of-turn witnesses, we will do that.  And I am particularly

7  mindful of the medical or health services witnesses to be

8  called.  And I normally am mindful of that; but in this

9  instance, where we are dealing with considerable demands on

10 their time in their chosen professions outside of testifying in

11 court -- so if any of them need to be called out of turn, we

12 will do so.  And just let me know, and we'll take the witnesses

13 out of turn.  When you make your summations, you can put them

14 back in the order you wish.

15           Okay.  I'm not going to rule on the admissibility of

16 any exhibits at this time other than to say that those that are

17 stipulated are admitted; and we have the list and the courtroom

18 deputy will mark those.  As to any other exhibits that are not

19 yet admitted, some of them are -- objections have been made,

20 and I'll just take those up as they happen.

21           I'm in receipt of the elements instructions and have

22 those, and thank you for them.  And I have just, again,

23 reviewed the amended pretrial order, which I signed yesterday;

24 and the new copy was provided today.

25           I think that takes care of what I have to do.

```
 1            Let me ask, first of all, from the plaintiff's
 2   counsel, with regard to the technicalities that are here, you
 3   have witnesses at a distance, some of them may be in your
 4   chambers, I don't know, are you ready to proceed under these
 5   circumstances?
 6            COURTROOM DEPUTY:  You have to unmute yourself.
 7            THE COURT:  Mr. Shapiro -- I'm not hearing
 8   Mr. Shapiro.
 9            COURTROOM DEPUTY:  You need to unmute yourself when
10   you talk.
11            THE COURT:  Would you please get somebody from IT up
12   here?  I want them here all the time.
13            MR. SHAPIRO:  I don't know what happened.  But, yes,
14   Your Honor, we are prepared.  The plaintiffs are prepared to
15   proceed under the circumstances as outlined by the Court.
16            THE COURT:  Okay.  Is there anything you want to bring
17   up now before I go to defense counsel?
18            MS. HOOD:  No, sir.
19            THE COURT:  All right.  Defense counsel -- is it
20   Ms. Bobet; is that correct?
21            MS. BOBET:  It's Bobet, Your Honor.  Thank you.
22            THE COURT:  Okay.
23            MS. BOBET:  We appreciate the opportunity the Court
24   gave the parties to test some of the technology that we will be
25   using at the trial.  We weren't able to get a lot of that
```

1  working on our end -- for instance, us dialing in.  We're
2  certainly happy to participate in another test, and we
3  appreciate that opportunity.  But since we haven't been able to
4  get it working yet, that is sort of where we stand now.
5    *THE COURT:*  Well, I asked for somebody from our IT
6  department to come up here so that we can have another
7  run-through, and you can make sure that everything is set to
8  go.  Then on Monday morning, when the testimony begins, opening
9  statements, I'll be sure to have somebody from the IT
10  department here, as well.
11    I have to tell you that -- you probably know that by
12  the color of my hair -- but I am not technologically adept.  In
13  fact, I'm probably a Luddite; but we just have someone from the
14  IT department who has showed up.  So let's make a run-through
15  here, and see that we're all set.
16    Mr. Shapiro, you're going to have your witnesses there
17  with you, or some of them will be in Grand Junction, I suppose?
18    *MR. SHAPIRO:*  We will have some in Grand Junction,
19  Your Honor; and we will have some with us.
20    *THE COURT:*  Okay. All right.  You'll have to make
21  that switch and make sure that that can be done.
22    And Ms. Bobet -- is that correct?
23    *MS. BOBET:*  Bobet, Your Honor.
24    *THE COURT:*  Okay.  You heard what I said to
25  Mr. Shapiro, and you will have your witnesses ready either here

1  or in Grand Junction and be ready to go at 9:00 a.m. on Monday
2  morning?
3             *MS. BOBET:*  Yes.  I believe all of our witnesses will
4  be remote.  We're not planning to have any in our office.
5             The issue in particular that we're -- that we faced on
6  the test and that we're hoping or need to get resolved in
7  advance of trial is being able to see and present documents,
8  which we weren't --
9             *THE COURT:*  There are a number of documents with
10 objections made to them.  And as I've already indicated, I have
11 to look at the documents anyway; so when you're offering them,
12 you -- some of them clearly have things in them that are not
13 relevant -- photographs of the Grand Canyon and two
14 extraordinarily large-breasted women walking around with
15 llamas, for example.  I assume those are guides -- at least I
16 hope they are -- but I have to look at those things, but I'm
17 not going to admit them.  We have to wait until the end to find
18 out what I am admitting and what I am not.
19            Are we connected, Mr. Shapiro, with your folks in
20 Grand Junction at this point?  Do you have them available now?
21 Have you run through to see if the pictures are working and you
22 can teleconference from there.
23            *MR. SHAPIRO:*  No, we have not done that yet, Your
24 Honor.  We were trying to get through the Court's system today,
25 and then we were going to try some test runs later this week

```
 1   with some of the witnesses.
 2           THE COURT:  Okay.  That makes sense.  Let's do it that
 3   way, and I will be on call.  I will not be in the courthouse
 4   itself, but I will be on call so you can reach me if you need
 5   to.  And same applies to the defense counsel.
 6           Now, I know that you had Magistrate Judge Hegarty
 7   presided over a settlement, and that -- I will only have a few
 8   comments about that.  The first is that I don't participate in
 9   trying to settle cases I have to try.  I just simply do not
10   have the gifts that some people have to know when they're
11   settling and when they're adjudicating, so I don't do that.
12   But I have the utmost faith and confidence in Magistrate Judge
13   Hegarty.  And he says we're going to trial, and that's all I
14   needed to know.  I don't know anything that went on before in
15   front of him or with him, and I don't want to know.  And I
16   don't care, because we'll do this solely on the basis of the
17   evidence here.
18           If you want to try and settle the case, and you need
19   some help, call Magistrate Judge Hegarty, and you don't need to
20   notify me at all.
21           Now, having said that, do you still think we're going
22   to try this case within five days.  Mr. Shapiro?
23           MR. SHAPIRO:  Yes, sir.  We do.
24           THE COURT:  I know you cut down on the number of the
25   witnesses, so that's good.
```

1           And do you agree, Ms. Bobet?

2           *MS. BOBET:*  I'm hopeful we will, Your Honor.  To a

3  certain extent, it will depend on whether we end up facing

4  delays with the technology; but I'm hopeful we can do it in

5  five days.

6           *THE COURT:*  All right.  I want you to be advised right

7  now that I have made time available after next week,

8  immediately following; in other words on -- that would be --

9  what would it be -- the 28th, 29th, 30th, 1st and 2nd of

10 October, that week is also available if we need more time.  But

11 we'll finish this case up once we start without any prolonged

12 continuances, unless I shoot myself because of the technology

13 involved.

14          All right.  Anything else, then, from counsel?

15          *MR. SHAPIRO:*  From plaintiffs, we have nothing, Your

16 Honor.  Thank you.

17          *THE COURT:*  Sure.  I will -- in the next few days,

18 I'll read all of the exhibits.  I've started doing that, but I

19 haven't finished yet.  And as I've said, I think I know how to

20 separate wheat from chaff as to what is relevant, what isn't,

21 what is admissible, what isn't.  I have to do it anyway, so

22 we'll just -- I'm saying that for the benefit of the Court of

23 Appeals across the street that I think I know what I'm doing.

24          All right.  Anything else from the Government?

25          *MR. SCARPATO:*  Your Honor, this is Bill Scarpato on

1    behalf of the United States.  The parties have had a couple of

2    conversations with regarded to sequestration of witnesses.  And

3    it is our -- in a videoconference context, it is a little bit

4    odd.

5         *THE COURT:*  They're sequestered from me, that's for

6    sure.

7         *MR. SCARPATO:*  That is for sure, Your Honor.

8         What we -- in an ideal world, what we would like be to

9    able to do is inform our expert witness physicians of the

10   progress of testimony.  I believe -- I'm sure Mr. Shapiro will

11   correct me if I'm wrong -- that plaintiff's position is that,

12   all witnesses should be, A, sequestered, and, B, should not

13   have the benefit of the preceding trial testimony.

14        *THE COURT:*  I have to rely upon the attorneys in this

15   situation to make sure the sequestration is honored; but it

16   cuts both ways for both sides.  So please advise your witnesses

17   they are not to discuss their testimony with one another before

18   or during the trial.  Afterwards, they can have a pint and talk

19   about it if they wish.  Okay?

20        *MR. SCARPATO:*  Your Honor -- I'm sorry, Your Honor.

21   Just to be clear, is that order that we are not to inform our

22   expert witnesses of any preceding testimony?

23        *THE COURT:*  That's right.  That's correct.  Each one

24   stands alone.

25        *MR. SCARPATO:*  Thank you, Your Honor.

1    *THE COURT:* And you and plaintiff's counsel will so
2    advise these people. I think that's the only way we can handle
3    it this way. Okay?
4            Anything else? We'll be in recess.
5            (Recess at 11:11 a.m.)
6                    REPORTER'S CERTIFICATE
7            I certify that the foregoing is a correct transcript
     from the record of proceedings in the above-entitled matter.
8
             Dated at Denver, Colorado, this 30th day of September,
9    2020.

10

11

12                                    *[signature: Therese Lindblom]*

13

14                                    _____
                                      Therese Lindblom,CSR,RMR,CRR